```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

BRIAN BYRNES,                    )
                                 )
        Plaintiff,                )    Civil Action No. 06-249J
                                 )
    v.                            )    Judge Gibson
                                 )    Magistrate Judge Caiazza
MANDY BISER, et al.,              )
                                 )
        Defendants.               )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Defendants' Motion to Dismiss (Doc. 8) be granted.

### II. REPORT

The Plaintiff, Brian Byrnes ("Byrnes" or "the Plaintiff"), is a state inmate confined at the State Correctional Institution at Somerset, Pennsylvania ("SCI-Somerset"). Byrnes commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that prison officials refused him access to a book entitled Nature's Eternal Religion because it contains "racially inflammatory material or material that could cause a threat to the inmates, staff or security of the facility . . . ." (Doc. 1, ¶C). Byrnes seeks to have the decision denying him access to the book overturned, and also asks that Creativity be recognized as a religion at SCI-Somerset. The Defendants have filed a Motion to Dismiss (Doc. 8) and Byrnes has responded (Doc. 14). The motion is ripe for disposition.

A. **The Legal Standard**.

The standard applicable to a Rule 12(b)(6) motion is that dismissal is appropriate if no relief could be granted under any set of facts that could prove consistent with the allegations in the Complaint. Hishon v. Spalding, 467 U.S. 69, 73 (1984); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986). Additionally, the Supreme Court recently clarified the Rule 12(b)(6) standard in Bell Atlantic Corporation v. Twombly. ___ U.S. ___, 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the standard established in Conley v. Gibson, 355 U.S. 41, (1957); *i.e.,* "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, 127 S.Ct. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court has now instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965

B. **The Analysis.**

The Defendants first assert that Byrnes has not made out a claim for denial of his right to practice his religion by alleging that he has been denied access to Nature's Eternal Religion. Although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights,

-2-

a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citations and quotations omitted). In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

The reasonableness of government action impacting a prisoner's constitutional rights is determined by considering the following four factors: (1) whether there is a valid, rational connection between the governmental action and a legitimate governmental interest; (2) whether there are alternative means of exercising the constitutional right that remains open to prison inmates; (3) what impact an accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and (4) whether ready alternatives exist for accommodating the prisoners' right at *de minimis* costs to valid penological interests. Id. at 89-90.

The regulation in question bans from the institution, inter alia:

> (5) racially inflammatory material or material that could cause a threat to the inmate, staff, and security of the facility . . . .

DC-ADM 803, at § F, ¶ 3. On July 20, 2006, Defendant Biser notified Byrnes that the publication Nature's Eternal Religion

was disapproved due to a security issue, *i.e.*, it contains "[r]acially inflammatory material or material that could cause a threat to the inmates, staff or security of the facility." (Doc. 8, Ex. A).

The prison's interest in security where racially offensive material is at issue is clear. See Chriceol v. Phillips, 169 F.3d 313, 316 (5th Cir. 1999)(upholding a state "policy of withholding mail that advocates racial, religious, or national hatred that creates a serious danger of violence"); Murphy v. Missouri Dep't of Corr., 814 F.2d 1252, 1257 (8th Cir. 1987)(state regulation banning racist publication constitutional provided that it is "limited to those materials that advocate violence or that are so racially inflammatory as to be reasonably likely to cause violence at the prison"); McCabe v. Arave, 827 F.2d 634, 638 (9th Cir.1987) (stating materials that advocate violence or are so racially inflammatory as to be reasonably likely to cause violence "can certainly be banned").

Creativity is the latest name given to what was once known as the "World Church of the Creator":

> [The] World Church of the Creator . . . does not worship God but instead depicts the 'white race' as the 'Creator' and calls for the elimination of Jews, blacks, and what it labels 'mud races.' Its slogan is: 'Dedicated to the Survival, Expansion, and Advancement of the White Race.' The World Church of the Creator's beliefs are explicated more fully in Nature's Eternal Religion, a book by its founder, Ben Klassen, and on its web site <http://www.wcotc.com>. The Church of the Creator

-4-

> is a recognized religious charity. The World Church of the Creator, as a racist group, is not entitled to that benefit, see Bob Jones University v. United States, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), and has had its charitable status revoked by both state and federal governments. See Church of the Creator, Inc. v. CIR, 707 F.2d 491 (11th Cir.1983); People ex rel. Ryan v. World Church of the Creator, 198 Ill.2d 115, 260 Ill. Dec. 180, 760 N.E.2d 953 (2001) (discussing related issues following the loss of state tax-exempt status in 1995).

TE-TA-MA Truth Foundation--Family of URI, Inc. v. World Church of Creator, 297 F.3d 662, 663-664 (7th Cir. 2002).[1]

A text premised upon the principle that the purity of the white race must be maintained, and that "mud races" must be eliminated, is – without any debate whatsoever- racially inflammatory. That said, the Pennsylvania Department of Corrections has a valid, rational interest in refusing inmates access to Nature's Eternal Religion. The first prong of the test set out in Turner is met.

Likewise, the second prong also weighs in favor of seizure. In its analysis, a court must consider whether an inmate has any alternative means of exercising his or her First Amendment rights generally, and not whether the inmate has alternative means of engaging in any particular practice. Thornburgh v. Abbott, 490 U.S. 401, 417 (1989)(regulation which permits "broad range" of

---

1. It is proper for a court to take judicial notice of facts not reasonably subject to dispute, Fed.R.Evid. 201(b), so long as the *source* is not reasonably subject to dispute. Id. 201(b). Victaulic Co. v. Tieman, ___ F.3d ___, 2007 WL 2389795 *6 (3d Cir. 2007).

publications to be received, sent and read satisfies the "alternative means" factor where prisoner receipt of publications is at issue). Indeed, this case is directly analogous to <u>Abbott</u> because only one book is at issue -and there is no claim that a broad range of publications have been banned.

Next, it is clear that permitting a prisoner to access materials racially inflammatory would adversely affect the prison population. With respect to this factor, "[a] court must consider the impact accommodation of the asserted right would have on guards and other inmates and on the allocation of prison resources, giving more deference to the judgment of prison administrators . . . ." <u>Lindell v. McCaughtry</u>, 115 Fed. Appx. 872, 877 (7th Cir. 2004)(<u>citing</u> <u>Turner</u>, 482 U.S. at 89-91).

Speaking only in a vacuum, it is not possible, nor constitutional, to prevent an inmate from reading books expressing racist views because, standing alone, it would not implicate legitimate penological interests. However, as the Supreme Court stated in <u>Abbott</u> "[t]he problem is not . . . in the individual reading the materials in most cases. The problem is in the material getting into the prison." <u>Abbott</u>, 490 U.S at 413. Focusing in on Byrnes claim, the circulation of <u>Nature's Eternal Religion</u> within the institution would create the potential for "coordinated disruptive conduct." <u>Id</u>. at 412.

The book at issue here appears to be the text for a radical,

racial supremacist group. Permitting the circulation of <u>Nature's Eternal Religion</u> in an institution housing diverse racial groups would adversely affect the prison as a whole. Consequently, the third factor weighs in favor of seizure.

Finally, Byrnes has not suggested a "ready alternative" to a ban of the publication. Hence, the final <u>Turner</u> factor weighs in favor of seizure. This consideration, parenthetically, may be generic at best because the issue here is clearly drawn -should Byrnes have the book or not?

In sum, the balancing required under <u>Turner</u> clearly supports a finding that the seizure of a single book which includes racially inflammatory material did not violate Byrne's First Amendment rights.

Lastly, the Defendants assert that Byrnes has failed to exhaust available administrative remedies with respect to his request that <u>Creativity</u> be recognized as a religion by the Department of Corrections. Byrnes does not address this argument in his response to the Motion to Dismiss, and thereby concedes that this claim is not properly before the court.

### III.   CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Defendants' Motion to Dismiss (Doc. 8) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C) and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by September 27, 2007. Responses to objections are due by October 9, 2007.

September 11, 2007

Francis X. Caiazza
United States Magistrate Judge

cc:
BRIAN BYRNES
DZ-8707
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510